```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

189 CONNECTICUT AVENUE, LLC,       :

     Plaintiff,                    :

V.                                 :   CASE NO. 3:09-CV-260(RNC)

MELVILLE CORPORATION,              :
now known as CVS PHARMACY, INC.,   :
and CVS CAREMARK CORPORATION,      :

     Defendants.                   :
```

## RULING AND ORDER

Plaintiff 189 Connecticut Avenue, LLC brings this action against defendants seeking damages for breach of a commercial lease.  At the time of the alleged breach, the property in question was occupied by LNT, Inc., which stopped making payments on the lease when it went into bankruptcy in 2008.  Plaintiff claims that the defendants, CVS Pharmacy, Inc. and CVS Caremark Corporation, were so intertwined with the original assignment of the lease to LNT, Inc.'s predecessor in 1992 that they are legally responsible for the breach by LNT, Inc.  Defendants have moved for summary judgment contending that they were not parties to the lease when the breach occurred and that their relationship with LNT, Inc. is insufficient for liability to attach.  I agree and therefore grant the motion for summary judgment (doc. 46).

I.   Summary Judgment

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the plaintiff must point to evidence that would permit a reasonable trier of fact to return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether this standard is met, the evidence must be viewed in the light most favorable to the plaintiff. Id. at 255.

II. Facts

The record before the court, viewed fully and most favorably to the plaintiff, shows the following. Charles Bradley owned commercial property located at 189 Connecticut Avenue in Norwalk, Connecticut.[1] In 1986, the property was leased to Seaman Furniture Company. The lease contemplated an initial term of fifteen years, which would expire on September 14, 2001. The lessee could renew the lease for three successive five-year periods. The renewal was not automatic; the lessee had to give written notice of its intention to renew at least ten months before expiration of the lease term. If the lessee elected to hold over without exercising the renewal option, the lease would become a month-to-month lease.

In January 1992, Seaman filed for bankruptcy in the Southern District of New York and sought authorization from the bankruptcy

---

[1] It is undisputed that plaintiff 189 Connecticut Avenue, LLC is properly considered the lessor of the property for purposes of this lawsuit.

court to assign the lease. In July 1992, the court entered an order authorizing Seaman to assign the lease to Melville Corporation ("Melville").[2] Melville's counsel prepared documents reflecting Seaman's assignment of the lease to a different company, Norwalk, L.T., Inc. On July 17, 1992, Seaman and Norwalk L.T. executed an agreement that assigned the lease to Norwalk L.T. Norwalk L.T.'s certificate of incorporation was not executed until July 20, 1992; it was filed with the Connecticut Secretary of State on July 22, 1992. After the assignment of the lease, a Linens 'N Things store opened at the 189 Connecticut Avenue location, where it remained in operation until 2008.

Between 1992 and 1994, Mr. Bradley received a number of documents referring to Melville as the owner of the leased premises. A certificate of occupancy issued in 1992 by the Norwalk Department of Code Enforcement identified Melville as the "owner of building" at 189 Connecticut Avenue. A 1992 zoning appeal, a 1994 certificate of insurance, and a 1994 letter about installation of a Personal Earth Station also referred to Melville as the owner.

In November 1992, plaintiff undertook to refinance a mortgage on the property. In connection with the refinancing, it had to provide an estoppel agreement and a non-disturbance

---

[2] CVS Pharmacy, Inc. is the successor to Melville Corporation.

agreement signed by the tenant.  Norwalk L.T. signed both documents, both of which listed it as the sole tenant.  Plaintiff signed the non-disturbance agreement that listed Norwalk L.T. as the tenant.  The non-disturbance agreement signed by the plaintiff states that Seaman assigned the lease to Norwalk L.T. in 1992.  There is no evidence that plaintiff objected to this statement when it signed the non-disturbance agreement.

Norwalk L.T. made lease payments on the property for several years.  On October 24, 2000, it exercised an option to renew the lease for an additional five-year term commencing on September 15, 2001.  Plaintiff did not object to Norwalk L.T.'s renewal of the lease, nor did it ask either of the defendants to guarantee the lease.

On December 1, 2000, Norwalk L.T. merged into LNT, Inc. LNT, Inc. continued to make payments on the lease.  By letter dated October 27, 2005, LNT, Inc. exercised a second option to renew the lease for another five years beginning September 15, 2006 and running until September 14, 2011.  Plaintiff's counsel signed a receipt and acknowledged LNT, Inc.'s exercise of the renewal option.  Plaintiff raised no objection to this extension.

In May 2008, LNT, Inc. stopped paying rent on the property and filed for bankruptcy in Delaware.  In September 2008, plaintiff filed a proof of claim in the bankruptcy proceeding for unpaid rent and other damages.  The bankruptcy court approved

LNT, Inc.'s rejection of the 189 Connecticut Avenue lease, and plaintiff amended its proof of claim seeking damages for unpaid rent through September 14, 2011. The parties agree that all the damages sought in this action stem from the second lease renewal covering the period September 15, 2006 to September 14, 2011.

III. Discussion

A. The 1992 Bankruptcy Court Authorization of the Assignment

Generally, a bankruptcy sale is completed in two parts. In re Met-L-Wood Corp., 861 F.2d 1012, 1016 (7th Cir. 1988). First, the bankruptcy court will "issue an order authorizing the sale." Id. Then, after the sale is completed, the court "will issue a second order, confirming the sale." Id. A bankruptcy court's approval of a sale creates a "binding obligation" on the winning bidder to complete the purchase. See, e.g., In re Kreger, 307 B.R. 106, 110-11 (B.A.P. 8th Cir. 2004). If a winning bidder fails to follow through, it can be sued by another party to the sale for breach of this obligation. See id. at 110.

Plaintiff contends that on July 8, 1992, when the bankruptcy court authorized Melville to assume the 189 Connecticut Avenue lease, Melville effectively became a party to the lease as a result of the court's order. I disagree. When Melville failed to assume the lease, it did not become a party to the lease by operation of law. Rather, it breached a legal obligation to become a party to the lease. Plaintiff could have sought to hold

5

Melville accountable in an action based on the breach. But any such action had to be brought within six years. Conn. Gen. Stat. § 52-576 (2010).

B. Adequate Assurances under 11 U.S.C. §365(f)(2)(B)

Plaintiff contends that the 1992 assignment from Seaman to Norwalk L.T. was invalid because it violated the "adequate assurance of future performance by the assignee" requirement of 11 U.S.C. §365(f)(2)(B). However, 11 U.S.C. §365(f)(2) does not require action by the assignee; it imposes a duty on the trustee of the bankruptcy estate. This section of the bankruptcy code does not provide a basis for making Melville a party to a lease it never signed.

C. Piercing the Corporate Veil

Under Connecticut law, a plaintiff can pierce the corporate veil in two situations: (1) when the corporation being sued is a "mere instrumentality or agent" of another corporation; or (2) when the corporate "identity" of the two entities at issue does not demonstrate that they are independent from one another. Naples v. Keystone Building and Development Corp., 990 A.2d 326, 339 (Conn. 2010). The plaintiff bears the burden of proof when it seeks to pierce the corporate veil. See Old Farms Associates v. Commissioner of Revenue Services, 903 A.2d 152, 166-67 (Conn. 2006).

In general, courts pierce the corporate veil only under

6

"exceptional circumstances." See Naples, 990 A.2d at 340. Piercing the corporate veil is an equitable remedy, and "courts decline to pierce the veil of even the closest corporations in the absence of proof that failure to do so will perpetrate a fraud or other injustice." Id.

Before deciding whether the evidence establishes a prima facie case to pierce the corporate veil, I must first determine the scope of the relevant contract. The alleged breaches of contract involve the second renewal period of the lease. Plaintiff argues that this extension was not a new contract, but merely part of the original 1986 lease. The defendants contend that the second extension stands on its own as a new, independent contract. This issue turns on a technical distinction in Connecticut Law between a covenant to renew and an agreement to extend.

In Connecticut, "[t]he question of whether a lease grants a covenant to renew or an agreement to extend is a question of intent." Nowesco, Inc. v. Community Petroleum Products, Inc., 456 A.2d 340, 342 (App. Sess., Super. Ct.1982). A covenant to renew "contemplates another lease for a distinct term." Id. at 341. An option that "must be exercised affirmatively prior to the expiration of the original lease" is a covenant to renew. Id. at 342. On the other hand, an agreement to extend occurs when the lease does not mandate that "the lessee affirmatively

act to renew the lease." Id. at 341-42.  An agreement to extend simply "continues the existing lease and merely enlarges the term thereunder."  Id.  An agreement to extend arises in some cases when a lessee takes no action and holds over as a tenant.  Id. at 342.

In Seven Fifty Main Street Associates Ltd. v. Spector, the Connecticut Appellate Court categorized a lease that required an affirmative act to trigger an additional five-year term as containing a covenant to renew.  497 A.2d 96, 97-99 (Conn. App. Ct. 1985).  The court considered what would have resulted if the lessee made no affirmative act of renewal.  See id. at 98.  The court observed that if the tenant held over, the five-year renewal would not take effect.  This bolstered the conclusion that the extension created a new lease.  See id.  In Freiheit v. Broch, the Connecticut Supreme Court found that a lease requiring the lessee to give 30 days' notice of its intention to exercise an option to extend for five years also contained a covenant of renewal.  118 A. 828, 828-29 (Conn. 1922).

Much like Seven Fifty Main Street Associates and Freiheit, the 189 Connecticut Avenue lease required an affirmative act before a new five-year lease period came into being.  The lessee was required to give notice of the renewal at least ten months in advance.  Moreover, inaction by the lessee would not have resulted in a five-year extension.  Indeed, if the lessee

8

remained silent and continued to occupy the premises after a lease term ended, the lessee would become subject to a month-to-month lease as a holdover tenant. Because an affirmative act was required to trigger the five-year term from September 15, 2006 to September 14, 2011, it follows that the affirmative act taken by LNT, Inc. in 2005 exercised a covenant to renew. Accordingly, a new lease was created. See Nowesco, 456 A.2d at 341. As such, the relevant contract for purposes of this action is the five-year lease covering the period September 15, 2006 to September 14, 2011.

Plaintiff provides no evidence to justify piercing the corporate veil with regard to this contract. Plaintiff has scant evidence to justify piercing the corporate veil at any point in time, but evidence for the period 2006 to 2011 is nonexistent. Plaintiff admits that it received the notice of renewal from LNT, Inc., and it makes no mention of any action by the defendants even tangentially related to the renewal. Plaintiff did not object to LNT, Inc.'s exercise of the five-year option, which plaintiff could have done under Section Twenty-One of the lease. Plaintiff provides no evidence that LNT, Inc. was controlled by either of the defendants during the lease. Nor does plaintiff provide evidence that LNT, Inc. shared a corporate identity with either of the defendants. Linens 'N Things and CVS appear to have been distinct entities from 2006 to 2011.

9

D.  Equitable Relief for Violation of a Court Order

Plaintiff contends that the defendants should be viewed as parties to the 1992 lease assignment because they violated a court order when they did not execute an assignment with Seaman. Plaintiff cites no case in which a court took such extraordinary action outside the context of a violation of a court-issued injunction.  See, e.g., Crandall v. Gould 711 A.2d 682, 687 (Conn. 1998) (upholding claim solely on the ground that a permanent injunction previously issued by the court was disobeyed).

Moreover, the record does not support a grant of equitable relief.  Plaintiff had notice in 1992 that Seaman had assigned the lease to Norwalk L.T.  Plaintiff did not bring this to the attention of the bankruptcy court.  Nor did it take any other action.  Even if Melville executed the agreement in 1992, its liability under the lease would not extend beyond the original fifteen-year term, which expired in 2001.  Moreover, plaintiff allowed Norwalk L.T. to exercise a covenant to renew the lease as of 2001 and subsequently allowed LNT, Inc. to exercise a covenant to renew the lease as of 2006.  In neither case did plaintiff object, and in both cases plaintiff had more than ten months' notice before the new contractual period started to investigate any risks related to the new contract.  Finally, permitting plaintiff to seek equitable relief would be

10

inconsistent with the statute of limitations governing actions for breach of contract. In essence, I would be equitably tolling a claim for more than a decade without just cause.

E. CVS Caremark Corporation as a Defendant

It is undisputed that defendant CVS Pharmacy, Inc. is the successor to Melville, which explains its presence in this lawsuit. There is no evidence that CVS Caremark Corporation has any relationship with Melville. In the absence of such evidence, CVS Caremark Corporation is clearly entitled to summary judgment.

IV. Conclusion

Accordingly, the motion for summary judgment (doc. 46) is hereby granted. The Clerk may close the file.

So ordered.

Dated at Hartford, Connecticut this 16th day of May 2011.

/s/ RNC
Robert N. Chatigny
United States District Judge